Supervisor of Assessments for Rock Island County, Appellee by Matthew Traft  Good afternoon everyone, Floyd Perkins here to represent Friendship Manor, Inc., which is a light care facility in the state of Illinois. as defined by the Illinois Light Care Facility Act. Basically a light care facility, there's a definition in the statute. It's a place where people, mostly seniors, they live at the light care facility in units. They're not called apartments. I want to follow a cooperative, I know people will argue about what that means, but basically it's a facility where people pay monthly assessments and reside in the facility. Under the Light Care Facilities Act, the organization, the company must provide certain types of benefits for those that are there, aimed at the type of residents that are there. So there's services that are extended and provided on the premises for those who reside there. Now, under the property code, the property code has provided a particular set of benefits to light care facilities. One of the things that one finds in the property code is the right to apply for a senior homestead exemption and a regular homestead exemption and build right into the property code next to a regular residential homestead exemption. Embodied in that particular statute is a provision for light care facility in order to apply and receive those exemptions is that the residents that are there are required to pay the real estate taxes and that the light care facility is required to credit that back to them. In our agreements, that's what our agreements provide. Friendship Manors has exemption for a light care facility is calculated based on the type of resident, if it's a senior or if it's a different type of resident, but it's a formula that pays the exemption based on the number of qualified residents for either one of those two exemptions and that goes to the light care facility and the light care facility must credit it to the resident if the agreement requires it, as I just explained. And so for decades, Friendship Manor had applied and received these exemptions. But in 2014, the supervisor for Brock Island County decided that he was not going to allow the exemption for the homestead exemption. He was looking at a 2001 statutory change that had occurred. The change was not in the body of 15175, that's the section for the regular homestead exemption, but was in the body of 15170, the senior homestead exemption. And the 2001 law had changed the wording in the 15170 senior exemption to clarify and as the legislators explained, to make sure that seniors were able to get the homestead exemption when they're in a light care facility. But 175 referenced a provision of 170 that existed when it was first put in place, but was changed by the 2001 law because the 2001 law changed a particular provision that said it must be considered to be a co-op under 170. In the 175 provision, it said a light care facility that was considered to be a co-op under 170 would then, if it did some other things, be entitled to the exemption. So when one looked at the 170 section after the 2001 changes, that exact wording was taken out. However, when one reads 170, it's very clear that it refers to the Light Care Facilities Act to define what it means by a light care facility in 170. The very nature of a light care facility is that of a co-operative. And so the argument started to take hold. So when the supervisor assessment denied the exemption, denied these exemptions and the right to receive the homestead exemption, a lawsuit was filed by Friendship Manor, her declaratory, against the supervisor because he was interpreting the statute. He was doing it a dozen years after he had allowed it to receive the exemption, but each year under that statute, I think in 175, I want to say I, that statute allows the section is, are going to be allowed. And so each year, the supervisor assessment looks at the various homestead exemptions, including these light care ones, and decides whether he's going to allow them. So a declaratory was filed. But there was nothing filed with the Board of Review first, no action filed to challenge the lack of the exemption or the process? Your Honor, I don't think the record really is very clear on what happened in that regard. I think that people thought about doing the 2014 challenge to the Board of Review, but the problem was the Board of Review's consideration of a single year exemption, which the assessor each year is going to decide whether or not to grant them. The Board of Review isn't really in a position to interpret statutes. It usually is talking about certain provisions. And this was coming down to a statute that had been in existence for a dozen years, and the supervisor was deciding that it now, light care, you know, this facility Friendship didn't qualify. And it was going to be This lawsuit was filed because everybody saw this as a prospective issue going forward, because each year, the supervisor could deny the exemption. And so is this the same supervisor who had allowed or approved of the request for exemption in prior years? Yes, Your Honor. So there's no change in personnel? No. In fact, it is the same. It happens to be the case. Yes, Your Honor. And for outside the record, are there other suits going on in the state? I mean, I doubt an individual supervisor perhaps came up with this, but maybe their association did. You know, Your Honor, I'm not aware that that's occurring. We were trying to find out. It could be. There could be some others, but I think people are looking to this to see how this will carry forth with regard to determining what this statute really means. Because it's really the intricacies of how the statute is worded is what became the issue here in the declaratory. I don't know how we would have jurisdiction if there was no exhaustion of the administrative remedies that are put out in statute. I mean, I know that usually you can file a DEC action, but here where you have it set out where you need to go to the Board of Review, then you can appeal to PTAB and do those things on this type of exemption. How is it that you think you can get around that in terms of our jurisdiction? Your Honor, one of the exceptions to exhaustion of administrative review is when some action is done unauthorized by law. So when a government actor takes on an action that isn't within his authority or her authority, one is not bound to follow all the administrative procedures and one can go to court. So in this situation, and it's our position, the supervisor, after a dozen years of allowing this, decided to just deny it in an interpretation of a statute in which he had no authority to deny. I think that it's pretty clear in the statute that life care facilities are entitled to a homestead exemption. The statute defines what a life care facility is. Our facility meets that definition. And the fact that there had been a change in the wording with regard to Section 170 in 2001, a dozen years before, is something where we thought, we believe that that was actions unauthorized by law and allows a simple declaratory action to declare those actions to be beyond his authority, unlawful, his interpretation of the statute erroneous. And I think that's what the circuit court ruled when it denied the motion to dismiss. The court saw that one of the reasons why a court could allow a matter to proceed in the courthouse rather than through the administrative process was with regard to exhaustion of administrative remedies and the fact that something is unauthorized by law. So I know that that's, you know, a tough area of law to look at. There's a section in the statute that allows, in the property code, that allows for actions directly in the circuit court when one is facing an issue where exemptions have been removed. So I'm not sure that that particularly applies, but the case law that talks about Section 25 in the property code does talk about how actions that are involved with exhaustion of administrative remedies and unauthorized by law can be an exception to having to pursue all the administrative remedies. And I think the case that we would point to is Carroll v. Illinois Department of Revenue, 396 L.F. 3rd, 329, which speaks about that kind of exception. And, you know, I can't really say too much more. I mean, this is not a very complicated issue with regard to that particular aspect, but I would certainly be willing to answer any further questions on that. But with regard to interpreting Section 15175, I think one has to see that when they put that into the, when the statute was there that originally talked about apartment buildings that were cooperatives, and then they stuck in, you know, at a time when life care facilities came along, they plugged that right into the middle of the statute and talked about it being a cooperative, and they put some language in 170 that life care facilities would be considered cooperatives. When they changed it in 19, in 2001, they were changing 170 to assure that seniors were going to get the exemptions. When you read the legislative contents, that's what the legislature intended. And both 170 and 175 referenced life care facilities. Now, what I've been talking about is this whole idea about it being a cooperative. But what the judge ruled on in this case is he went down to the other section and he talked about whether or not the residents have to be title holders of real estate, which is at the bottom part of that particular 175 section. And when one reads it, it does talk about ownership in the apartment building. The court changed that to the premises. And I think when one reads it, it's pretty clear that it's interspersing the two types of additional, besides residences of single families, the two types of other residential properties that can get exemptions, one being apartment buildings that are cooperatives and the other being life care facilities. And when the court got to looking at that section, it confused the fact that the residents would have to be owners of the apartment building, because those apartment buildings are co-ops. They're where people are actually owners, is what this section is allowing, not apartment dwellings. And so I think that section is clearly about the residents having to be owners. It's clearly related to apartment buildings and not the life care facilities. Because when you go on further, it talks about what a life care facility is. It's the type of empathy in the Act. And when one goes to the Act, it's very clear that the residents of a life care facility are not title owners. They're not condo owners. They're not cooperative owners in the old cooperative property owners sense. They're really unit holders. And I think this 175 is clear enough in that regard to make it clear that to apply, those residents don't have to have title ownership. And that's really what the court found. The court changed the word apartment building to premises, and I think that that certainly was distorting what the legislature intended and is not consistent with what the statute's intent was. And interpreting statutes, giving the legislature their intent, when there's some types of ambiguities and whether or not this applies to life care facilities would be an ambiguity. And I certainly think extending the right to these exemptions to the folks in the life care facilities is clearly the intent of the legislature when it crafted 175. But the language of 175 spells out that it is for land approved as an apartment building owned and operated as a cooperative or a building which is a life care facility is defined in 15170. It specifically sets that out and then goes on to say that it was liable by contract with the owner or the owners for paying the property taxes on the property and is an owner of record of a legal or equitable interest in a cooperative apartment building. So, I mean, I think that the statute... that are found in the Life Care Act, life care residents don't own, don't have title interest. And the statute is talking about owners in the apartment building, which is a different kind of animal than a life care facility. And so I think the court, when it changed apartment buildings to premises, confused what that statute is requiring for life care facilities. Because life care facilities across the state get these exemptions. This is to help these people and, you know, many, many residents and they don't have, the life care facility residents don't, under the Act, have title interest. They have a unit owner interest, which is more of a personal property or inchoate interest than a real property interest that would be recorded. It wouldn't even make sense in the real world to have ownership interest in a life care facility, would it? It's not how it works. You're correct, Your Honor. Life care facilities never have had people who have owned the units with a recorded kind of property interest that they're speaking of. Where apartment buildings that are co-ops, like in Chicago, there are recorded interests of people. And it's a normal type of ownership today. They're mostly condos. But, you know, I can't say that there aren't some throughout the state that are apartment buildings that would meet this. But it's not, you know, typically apartment buildings, people don't have a title interest either. But there are, could be a senior co-op apartment building in Chicago, as they call it, where people do have the title interest. They get recorded. More rare than not. And the old type of law, and then life care facilities came along and they stuck this in 175. And if we were rewriting it, we certainly would try to write it differently. Thank you, Mr. Perkins. Thank you. Mr. Trapp. My name is Matthew Trapp and I represent the appellee, Larry Wilson. He's the Supervisor Assessor for Rock Island County. Mr. Harden, who's also an appellee, represents the intervener, the school district. Our time is being divided, so I'm going to be addressing jurisdictional issues. I believe he's going to address the statutory interpretation issue. It's our position that the trial court never had jurisdiction in this matter, and therefore the appellate court doesn't have jurisdiction over this matter. The property tax code is a comprehensive statute that regulates the assessment and collection of taxes. The tax objection procedure is pretty broad, and it encompasses pretty much all objections to tax, taxes, assessments, and levies. It complies with complete remedy with very few exceptions. So therefore, the general rule is that declaratory relief is unavailable on real estate taxes because an adequate remedy exists at law. And that adequate remedy is the tax objection where you pay your taxes under protest, and then you file a tax objection complaint. Just by way of some statutory background, section 1670 of the property tax code says that the board of review shall hear and determine claims of exemptions. Their decisions are not final except with respect to homestead exemptions. That statute says with respect to non-homestead exemptions, that can be reviewed by the Department of Revenue, and then if a party doesn't like that decision, then it's reviewed by way of an administrative review complaint in the circuit court. At section 1670, like I said earlier, it says that the board's decision is not final with exception of homestead exemptions. That statute is silent on how to review homestead exemptions, but you'll find the statutory provisions regarding how to review denials of homestead exemption decisions in section 2325 of the property tax code. That section, I believe it's titled Restriction on Judicial Determination. For example, section A of that section says that basically prohibits tax objections in non-homestead exemption cases. Subsection C allows, or says that section doesn't apply to any of the exemptions listed in 15165 through 15180. Those are the sections where the homestead exemptions are found, including both the senior homestead exemption and the general homestead exemption that we've been talking about here today. It's clear that the legislature contemplated that the denial of a homestead exemption decision by the Board of Review would be challenged by way of a tax objection. In fact, Plaintiff, I believe in October of this year, 2016 filed a tax objection based off the denial of exemption decisions. I think that was after the trial court's decision, so that's not something that we'll find in the record, but I think it's something the court can take judicial notice of the Rock Island County Circuit Clerk's docket. Now, as counsel discussed, there are exceptions to the requirement that you proceed by tax objection, and one such objection is that the tax is unauthorized by law. But this isn't one of those cases that are meant to be within that exemption. The Supreme Court in Millennium Park said, a true unauthorized by law challenge arises where the taxing body has no statutory power to tax in a certain area or has been given no jurisdiction to tax a certain subject. This is not an issue of where the taxing bodies do not have the authority to assess the property tax on a life care facility. There's no question the Board of Review had the power to make an exemption decision. They're just complaining about, essentially, their tax bill because they didn't like the exemption decision, which caused a net increase in the property tax of the residents. I don't think counsel cited any cases that say a denial of a homestead exemption by a Board of Review would qualify as an unauthorized by tax, or by law, exemption to the requirement that there be a statutory tax objection. The other cases cited in their brief, like I believe Hawkins, that case was an unauthorized by law case because they were challenging the ability to enact an ordinance creating a special service area and a special service tax. So the claim there was that the tax was void, or that the ordinance was void, and therefore the tax was void. That's unauthorized by law. Millennium Park, the issue there was the plaintiff only had a license to use the property. He didn't have a leasehold interest, or he didn't own the property. So he can't tax a license, so therefore taxing that was unauthorized by law. Here, for the reasons I stated before, property tax code provides a clear remedy, which is a tax objection complaint, which they've filed with respect to homestead exemptions, and therefore the general rule that declaratory relief is unavailable in a real estate tax case applies because the adequate remedy of law exists. Justice O'Brien touched on exhaustion of administrative remedies earlier. Early on in the case, we did a motion to dismiss that I think had an exhaustion argument in there, but I think that was based on the fact that they, if I remember correctly, filed their assessment complaint in the Board of Review, and while that was pending, they filed this declaratory judgment action, and I believe our exhaustion argument was that they can't seek both. They can't go in the Board of Review and seek relief and then at the same time seek relief in the circuit court, which is different from our jurisdictional argument, which is the trial court never had jurisdiction over the declaratory judgment action in the first place because it needed to be a tax objection procedure. If the court has no questions, I'll move. The doctrine of exhaustion of administrative remedies is basically a judicially created denial of the general jurisdiction for the jurisdiction immediately to avoid the equitable jurisdiction of the court because you do provide in the statute, and the reason we have that is the statute provides thereafter that you can't go into a general jurisdiction court. I dare say that there would be no doctrine if the statute didn't provide for that. Most courts are loathe to give up jurisdiction. That's true. Thank you, Mr. Pratt. Mr. Harden. Thank you, Your Honor. May it please the court and counsel. I represent the intervener, Rock Island Mile and School District. We intervened in this lawsuit at the trial court level because about 60% of the tax collected from Friendship Manor goes to school funding for the district. We concur with counsel for the assessment. Is that the same proportion for any property owner in Rock Island County? Within the district's boundaries, yes, Your Honor. So anybody who's assessed a property tax, 60% of the tax bill goes to school. That's correct for this district. Yes. We concur with counsel for the assessor on the jurisdictional issue. I'd just like to say to the extent that Friendship Manor is relying on the lack of authority argument, that the assessor lacked authority, that's not applicable here. I mean, the assessor has the authority to grant or deny the exemption. They're just saying that the assessor was wrong in denying it. That's not going to invoke that exception to the jurisdictional issue. I'd like to focus my time here on the merits of the statutory issue. We believe that the trial court was correct. Friendship Manor and its residents don't qualify for the general homestead exception because their residents have no ownership in the premises or the cooperative apartment building, which is what the statutory language says. Now, Section 1570, that was amended. Is that correct? That is correct, Your Honor. In 2001, that is the senior citizen's homestead exemption. That exemption is not part of the dispute in this case. Everyone agrees that Friendship Manor's residents are entitled to that exemption. And that's because why? That is because in the statute itself, in Section 170 governing the senior homestead exemption, it says that life care facility residents receive the exemption irrespective of any legal or equitable ownership interest in the building. So the General Assembly knew how to say you get the exemption if you're an owner and you get the exemption if you don't have an ownership interest. In Section 170, they said you get it if you don't have an ownership interest. In Section 175, which is that issue in this appeal, they don't say that. And, in fact, they say the exemption only applies to those who own a legal or equitable interest in the building. And are they addressing life care facilities when they say that? We believe that the statute, when read as a whole, yes, that is addressing life care facilities. If you look at the top part of Section 175, the statute is equating a life care facility with a cooperative building. That's in the entry section of Section 175F. So when they get down to the lower section talking about how to apply the exemption and say you have to be a resident who is liable for paying property taxes through a contract with the record owner and an owner of a legal or equitable interest in the cooperative apartment building, that's linking it back to the statute's earlier conflation between a life care facility and a cooperative building. And just in a broader sense, Your Honor. So you're saying that prior statute, life care facility has to be under that statutory language, a cooperative. Are you talking about Section 170, Your Honor? 175 was not amended. I think that's what you were addressing right now. I was just addressing Section 175 because that's where the issue, is that issue in the appeal. Section 175 has not been amended. The 2001 amendment was only set. Why is the language correctly interpreted by the supervisor of assessments here under 170? I'm sorry. There seems to be a tension between 175 and 170. Do you agree? They've been made an issue in this appeal. Well, we'd argue that there's really not a tension between them. Section 170 is the senior citizen's exemption. Correct. In 2001, it says the exemption applies to life care facility residents irrespective of an ownership interest. Correct. Section 175, which is the general homestead exemption, which is at issue in the appeal, does not say that. And, in fact, it says that there is an ownership interest needed. It doesn't have to be a record ownership interest. No, you're talking about cooperatives in terms of contractual. Correct. Did I adequately address the Court's question? So far. Okay. Thank you, Your Honor. I think just two general principles on the statutory issue that the Court needs to be aware of. The first is we're interpreting a property tax exemption statute. The presumption is in favor of taxation and against finding an exemption. That's always the presumption in this state, isn't it? Yes, Your Honor, probably so. And that means that any ambiguity, this is the Quad City Open case, that means that any ambiguity in the statute has to be resolved against the applicant for the exemption in favor of taxation. And also there's one other. The other issue I'd like the Court to be aware of, the whole purpose of property tax exemptions and homestead exemptions in particular is to grant relief to owner-occupants from the burden of taxation. That is, we're talking about people who own the building where they live in a homestead. That purpose is not furthered by the argument friendship and manners advancing here. Because the residence is undisputed through their contract with friendship and manner, they expressly disclaim any ownership interest. And the ownership requirement is seen all through the property tax exemption statute, not just the two sections that we've discussed here. But if you look at Section 176, which we discussed in our brief, that requires that to get an exemption the white care facility resident has to have an equitable ownership interest or legal ownership interest. If you look at Section 172, which is an assessment freeze, the same requirement applies. The white care facility resident has to have a legal or equitable interest in the building. Same with Section 168, which is an exemption for people with disabilities. So all through the statute, the General Assembly is requiring ownership for white care facility residents to get an exemption. We don't believe that the general exemption in 175 should be any different. So in effect, to make it simple, is that they are entitled to the senior exemption. Is that correct? That's correct, Your Honor, and that's not undisputed. Right, but they're not, from your perspective, entitled to the general homestead exemption. That's correct, Your Honor. The General Assembly, for whatever reasons, has seemingly made a choice. The senior citizen's exemption, which is the legislative history discussed by Friendship Manor, when that was changed in 2001, they said, you can get your senior citizen's exemption if you don't have an ownership interest. They left Section 175, which does require an ownership interest unchanged. Thank you. Thank you, Mr. Harden. Mr. Perkins, everybody. Thank you, Your Honor. When Counsel was speaking about the unauthorized by law argument that we're making, we're not talking about something the Board of Review did here. We're talking about how the supervisor of assessment goes about awarding these homestead exemptions. He's the person who decided that Friendship Manor should not get this exemption. He's the person who we believe acted unauthorized by law because the statute is pretty particular. It provides for life care facilities to enjoy these kinds of exemptions for its residents' benefit because the statute requires it actually extends to them. And that is actually also the purpose of the statute was to extend these exemptions to these seniors and people who no longer had an individual home, but were also paying the cost and paying real estate taxes through their residencies at these facilities. They would be getting this exemption in a group exemption, and it would flow back through them. They're required to pay the tax. The exemption gets sought by the facility, but it's credited back to them. So the purpose there is a creature of statute, but it's also to give that exemption to those residents who are also paying real estate taxes. But when Council said the Board of Review should be the place where that unauthorized by law argument is made, the argument is at the supervisor who is deciding each year not to grant Friendship Manor this exemption. The real change here was when 170 got changed. 170 came after 175, and so when someone talks about this change to 170 in 2001 getting it right, and they could have gotten it right for 175. No changes were made to 175. 175 was written at the time. 170 originally was written. And the language that was in 170 that got changed in 2001, it got stricken out where it says, a building which is a life care facility which shall be considered to be a cooperative. That was stricken out of 170 in 2001. And some more clarifying language to address the senior citizen's homestead exemption was added to 170 because there had been some issues with regard to that. That language of taking that out in the middle of that really had nothing to really do with 170. It didn't really need to have that cooperative being definitional cooperative in here, but it had been in the statute. That is what's now affecting 175 because it referenced back into 170 in that language in 170. What does it reference back to 170? In 175 it said. Or I mean 175. Yeah. 170 says a building which is a life care facility is defined in section 15170 and considered to be a cooperative under section 15170. I say that, you know, considered to be a cooperative under 15170. I still say 15170 makes life care facilities cooperatives. It defines what they are. It defines to them. It goes back and defines to the Life Care Facilities Act. The fact that they struck that language out in the middle and went on and provided other provisions in there, the very nature of a life care facility is a cooperative. It's people living in a cooperative environment done in with unit ownership. It's not an apartment building. It's something different from an apartment building. And it's what was intended by the Life Care Act. It's what Friendship Manor is doing. And it's cooperative nature of providing for these residents who all pay the tax through Friendship Manor, assessed to them, and the exemption handed back is the very nature of what these particular statutes provide. To answer the court's question about bringing this action, you know, section 35ILCX200-23-25 is the section that's talked about in Carle in the Millennium Park. And that section is pretty interesting. It says no taxpayer may file an objection on the grounds that the property exempt is otherwise provided herein. And then in E, it says this section shall not apply to court proceedings to establish an exemption for any particular exemption year provided that the plaintiff or its exemption has been given in prior years. So there is some, one could point to this section and suggest that it also authorizes the right to bring this action because there have been exemptions for a dozen years with no change in 2014. And then in 2014, it's being applied. And one other thing that I would like to point out to the court is that counsel did point out the idea of complaints and protests, but in section 23-5, it does say this shall not be, if any person desires to object for any part of a property tax for any year for any reason other than the property is exempt, then you must file the protest complaint. But section 23-5 removes that from the protest language in that section. So I think that one then looks at 23-25E, and if you've had an exemption in a previous year, you're allowed to come to court. But I also argue that you also have the right to come to court under the grounds of avoiding administrative review and not having to exhaust administrative remedies because the interpretation of the statute by this supervisor is wrong, and he's not authorized by law to deny the exemption when he misinterprets the statute after allowing it for a dozen years, and I think getting a declaratory against him where he's going to be able to apply it year after year after year, and we're not asking for monetary relief in this complaint. We're asking for a declaration of whether he was right or wrong in his interpretation of 175. I think I'm over my time. All right, Mr. Perkins, thank you. Thank you. And thank you both, too, for your arguments here today. This matter will be taken under advisement, but the resolution will be issued. And right now, we're going to move to recess. We're panelists. Thank you very much. Thank you. Thank you.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.